

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| v. | ) No. 04 C 7015 |
| | ) |
| Rafael Medina, | ) Wayne R. Andersen |
| | ) District Judge |
| Petitioner. | ) |
| | ) |
| | ) |

## MEMORANDUM, OPINION AND ORDER

Before this Court is the motion of petitioner, Rafael Medina, to vacate his sentence pursuant to 28 U.S.C. §2255. For the reasons set forth below, we deny petitioner's motion.

## PROCEDURAL HISTORY

On February 18, 2003, petitioner pled guilty pursuant to a written plea agreement to possessing with the intent to distribute approximately 14.85 kilograms of cocaine, in violation of 18 U.S.C. §841(a)(1). This Court accepted petitioner's guilty plea and entered a judgment of guilty. On November 7, 2003, petitioner was sentenced to a mandatory minimum term of 120 months in the custody of the Bureau of Prisons after the Court determined that he was not eligible for relief under the identical "safety valve" provisions of U.S.S.G §5C1.2 and 18 U.S.C.A. § 3553 (f). This Court found that petitioner failed to meet two prerequisites of the safety valve because he had more than one criminal history point and did not truthfully provide all the information he could concerning the crime to which he pled guilty. Petitioner did not appeal this Court's judgment or sentence to the Seventh Circuit.

## DISCUSSION

Petitioner's claims all derive from his contention that he had ineffective assistance of counsel. The arguments petitioner raises are: 1) his guilty plea was unknowing and involuntary because he thought he would receive a sentence of no more than 78 months; 2) counsel was ineffective for failing to explain, and insure that defendant met, the requirements of the safety valve; and 3) he was denied assistance of counsel when his trial counsel did not file a notice of appeal despite his request that she do so.

To show ineffective assistance of counsel, petitioner must show (1) that his attorney's representation fell below an objective standard of reasonableness; and (2) that there exists a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000), citing *Strickland v. Washington*, 466 U.S. 668, 688-95 (1984). Typically, the first prong of the test for ineffective assistance of counsel is called the "performance prong" and the second prong is called the "prejudice prong."

The legal standards surrounding the two prongs are well-settled. With regard to the performance prong "the [petitioner] must identify the specified acts or omissions that form the basis for his claim." *United States v. Moya-Gomez*, 860 F.2d 706, 763-764. Once these acts or omissions are identified, we must "determine, in light of all the circumstances, if the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Given the wide range of competent assistance, and the endless tactical decisions faced by counsel and client alike, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.*

Prejudice may only be found if the court's confidence in the outcome of the proceeding is undermined as a result of counsel's performance. *See Morris v. United States*, 264 F.3d 726, 727 (7th Cir. 2001). Unless there is a reasonable probability that the proceedings would have a different result, no finding of prejudice is warranted. *Strickland*, 466 U.S. at 694. As such, the essence of the prejudice inquiry is any effect counsel's performance had on a matter that was outcome determinative to the case.

In order to establish that his attorney was ineffective in relation to the negotiation and entry of the plea agreement, petitioner must meet the performance and prejudice prongs laid out above. First, petitioner has to show that his counsel performed in a deficient manner in the plea process. *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003). Second, petitioner must show that his lawyer's actions were a decisive factor in his decision to plead guilty. *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999).

### I. Petitioner's Claims Relating to the Plea Agreement and Sentencing

Petitioner's first and second claim, which relate to counsel's performance in the negotiation and entry of the plea agreement and at sentencing, are rebuked by the record in this case. Counsel's actions met the "performance" prong of *Strickland*. Moreover, the "prejudice" prong of *Strickland* is an insurmountable hurdle for the petitioner since his refusal to disclose all he knew about the drug transaction to which he pled guilty and his prior criminal history insured the inapplicability of the safety valve.

In his plea agreement, petitioner acknowledged he understood that "the charge to which he [pled] guilty carries a mandatory minimum penalty of ten years." This Court reiterated the ten year mandatory minimum during the plea colloquy and confirmed that petitioner understood its impact.

Petitioner's plea agreement likewise contained reference to the two crimes the government intended to rely upon to establish that he had two criminal history points. Again, this Court confirmed petitioner's understanding that, despite his contentions that he was not the individual convicted of those crimes, the government was entitled to prove them up at a sentencing hearing. The plea agreement also established, and this Court confirmed, that no "threats, promises, or representations [were] made, nor agreements reached, other than those set forth [in the agreement]." Before accepting the plea, this Court also made sure the petitioner understood the safety valve, and pointedly reminded petitioner that ""with respect to the safety valve: One of the elements of that is full disclosure and cooperation with respect to the particular offense."

Petitioner's claim that his entry of a guilty plea was unknowing and involuntary because he was told he would receive a sentence of no more than 78 months is meritless. To accept that argument we would have to ignore no less than five statements made by the petitioner consisting of: 1) his statement in the plea agreement that he understood the mandatory minimum sentence; 2) his statement to this Court that he understood the mandatory minium sentence; 3) his statement in his plea agreement that no additional threats or promises were made; 4) his statement to this Court that no additional promises were made; and 5) his statement to this Court that he understood he was required to tell the complete truth about his crime to be eligible for the safety valve. Additionally, defense counsel credibly testified that she never told petitioner he was guaranteed the protection of the safety valve or a particular sentence. Petitioner's self-serving assertion that he was told he would receive no more than 78 months in custody does not overcome his numerous other statements to the contrary in his plea agreement and during the plea colloquy as well as the testimony of defense counsel refuting his present claims. Petitioner was well aware of the sentencing parameters he faced when he entered his guilty plea.

At sentencing, defense counsel ably argued that petitioner was telling the complete truth regarding the offense to which he pled guilty. The government, however, contended that the petitioner failed to disclose the full extent of his knowledge concerning the drug transaction that resulted in his conviction. Petitioner testified extensively at his sentencing hearing. Essentially, petitioner claimed that a person he did not know entrusted him with several kilograms of cocaine. Common sense led this Court to find it "incredible that someone would leave this quantity of drugs with a person he didn't even know." This Court further noted that it was "not aware of any situation where a person turned over–and I am not going to use the millions that the U.S. Attorney uses, $300,000 worth of cocaine and let someone drive off with it. . . . That makes no sense at all." Once this Court determined that petitioner was not telling the complete truth, the mandatory minimum sentence applied.

However, this Court also considered the issue of the criminal history points assigned to the petitioner. Although the petitioner initially denied that he was convicted of two prior offenses, he finally relented and admitted to having the convictions after being presented with fingerprints from the earlier arrests. Accordingly, there was no dispute that defendant had more than one criminal history point. Petitioner was, therefore, ineligible for the safety valve because of both his criminal history and the fact he failed to disclose all he knew of the offense.

In fact, counsel's performance at sentencing likely lowered the sentence petitioner is presently serving. Over the government's strong objections, petitioner was credited with acceptance of responsibility and the Court found that the criminal history category set forth in the presentence investigation report substantially over represented the seriousness of petitioner's criminal history. The sentencing rulings resulted in a guideline range that included the 120 month mandatory minimum. If this Court agreed with the government and refused to modify the petitioner's criminal

5

history category and removed any credit the petitioner received for acceptance of responsibility, the low end of the guideline range would have been 151 months, substantially longer than the 120 month mandatory minimum to which petitioner was sentenced. Counsel's arguments at sentencing avoided such a dire result and fell well within the wide range of professionally competent assistance.

## II. Petitioner's Claim That he Requested the Filing of a Notice of Appeal

Petitioner's third claim, that his trial counsel failed to appeal despite his request that she do so, states a potentially valid claim. *See, e.g., Castellanos v. U.S.*, 26 F.3d 717, 720 (7th 1994) ("We vacate the judgments of the district court and remand so that the courts may determine whether [petitioners] timely told their lawyers that they wanted appellate review. If the answer is yes, then the court should enter an order providing the appropriate relief for the ineffective assistance: the defendant receives the right to an appellate proceeding, as if on direct appeal, with the assistance of counsel.") To determine the validity of petitioner's assertion he requested counsel file a notice of appeal, this Court held an evidentiary hearing on February 24, 2006.

Petitioner's trial counsel testified that, after she discussed the prospects of a successful appeal, as well as the possibility that the government could file a cross appeal and seek a longer sentence, petitioner decided against filing an appeal. This Court found counsel's testimony credible and determined that petitioner decided against the filing of an appeal. Among the reasons this Court found trial counsel's testimony credible was her explanation of the process she follows in discussing with her clients their appellate rights, the scant amount of time required to file a notice of appeal, and her assertion that she informed her client of the low likelihood of a successful appeal and the possibility that the government could cross appeal and obtain a higher sentence than the petitioner is currently serving. Accordingly, we find that petitioner informed counsel he did not wish to pursue an appeal and is not entitled to relief.

## CONCLUSION

For the reasons stated above, petitioner's motion to vacate or set aside his sentence [1-1] is denied.

It is so ordered.

/s/ Wayne R. Andersen
Wayne R. Andersen
United States District Court

Dated: March 9, 2006